WESTON and another vs. THE SUPERVISORS OF SHAWANO COUNTY and others.

CONTRACTS VS. THE TAXING POWER. *(1) Such contracts strictly construed. (2, 3, 5, 6) Construction of contract in this case. (4) Recitals in patent; their effect.*

1. Contracts relied upon to prevent the exercise of the taxing power of the state, are construed strictly against that effect.

2. An act of the legislature in 1867 provided that all lands granted to the state to aid in the construction of a certain road should be exempted from taxation until March 3, 1873, and while the title thereto should remain in the state, or in the contractor to construct said road or his assigns. An amendatory act in 1868 limited the exemption to March 3, 1869. *Held*, that the amendatory act was valid at least as to lands which, at the time of its passage, the state owned and had not contracted to convey to said contractor or his assigns.

3. The contract for constructing such road, entered into by one B. with commissioners on the part of the state, July 20, 1867, provided that, upon full performance by B., he should have "all the land granted by congress for this work," except (among others) the thirty sections "held or claimed to be held by the state as a fund for the payment of expenses in and about the construction" of said road. Plaintiffs, as B.'s assignees of the contract, in 1871, received from the state a patent of all the lands described, and not excepted, in said contract, and also of a part of the thirty excepted sections; and the patent recited that a certain portion of said thirty sections had been sold to reimburse the state for expenses incurred by it in relation to the construction of said road; that plaintiffs had advanced to the state $1,756 for payment of other expenses so incurred; that, from the moneys realized from such sales and advances, all such expenses were fully paid; and that, under certain recited contracts for the construction of the road, and assignments thereof, plaintiffs were entitled to receive the residue of the thirty sections. *Held*, that plaintiffs were not entitled to demand of the state any part of said thirty sections by virtue of B.'s said contract with the commissioners; and the only consideration for the conveyance of that part of the land to them was the $1,756 advanced by them.

4. The commissioners had contracted with one W., in 1864, for the construction of said road, and this contract, after various assignments and partial performance, had come to B. and two others as assignees, in 1867; but nothing further was done under it before the commissioners entered

Weston and another vs. The Supervisors of Shawano County and others.

into the new contract with B. above mentioned. The patent to plaintiffs recites the fact of such contract with W., and its successive assignments (as well as the subsequent contract with B.), but does not show its terms, nor do they appear from the record in this case. *Held,*

(1) That it will not be presumed that plaintiffs acquired a right to any part of said thirty sections under the contract with W.

(2) That even if they acquired such right, that contract, not having been entered into on faith of the exempting act of 1867, but long before its passage, could not invalidate the amendatory act of 1868.·

5. Under the statutes above recited, therefore, all lands in said thirty sections were liable to taxation in 1872.

6. Whether or not ch. 178 of 1869, purporting to repeal the second section of said amendatory act of 1868, extended the time of exemption of lands conveyed to plaintiffs by virtue of B.'s said contract, it had no effect upon the liability to taxation of said thirty sections.


APPEAL from the Circuit Court for *Shawano* County.

Action to avoid the proceedings of the county of Shawano in assessing certain lands for taxation in 1872, and subsequently selling the lands for the unpaid taxes of that year, and to restrain the issue of tax deeds upon such sale. The question at issue, and the essential facts bearing upon it, are sufficiently stated in the opinion.

The circuit court held the tax sales valid, and rendered judgment accordingly; from which the plaintiffs appealed.

For the appellants, briefs were filed by *Norris & Chynoweth,* and the cause was argued orally by *Mr. Chynoweth.* After discussing the general power of state legislatures to enact laws relinquishing the power of taxation over particular portions of the property in the state, and the power of the legislature of this state in particular to enact such laws under the constitution of this state, they contended, 1. That ch. 429 of 1867, exempting from taxation for a certain number of years the lands therein mentioned, entered into and formed a part of the subsequent contract of the same year between the state and plaintiffs' assignor, under which plaintiffs constructed the road in aid of which such lands were granted, and agreed to receive said lands in payment therefor. It was a part of

the contract between the state and the plaintiffs, therefore, that the lands should continue to be exempt from taxation as provided in that act. Cooley's Con. Lim., 285; *West River Bridge Co. v. Dix*, 6 How., U. S., 533; *Bronson v. Kinzie*, 1 id., 319; *State Bank v. Knoop*, 16 id., 384; *Fletcher v. Peck*, 6 Cranch, 87; *Gelpcke v. Dubuque*, 1 Wall., 175; *Havemeyer v. Iowa County*, 3 id., 294; *Herrick v. Randolph*, 13 Vt., 531; *Blanchard v. Russell*, 13 Mass., 16; *People v. Bond*, 10 Cal., 570; *People v. Woods*, 7 id., 579; *State ex rel. Damman v. Comm'rs*, 4 Wis., 418; *State ex rel. Mayers v. Comm'rs*, 5 id., 348; *Cornell v. Hichens*, 11 id., 371; *Streubel v. M. & M. Railroad Co.*, 12 id., 67; *Robinson v. Howe*, 13 id., 347; *Smith v. Appleton*, 19 id., 469; *State ex rel. Knox v. Hundhausen*, 23 id., 508; *West Wis. Railway Co. v. Supervisors*, 35 id., 257. The legal presumption is, that there was a sufficient consideration for the contract (Cooley's Con. Lim., 127; *Providence Bank v. Billings*, 4 Peters, 561; *Charles River Bridge v. Warren Bridge*, 11 id., 420; *Ohio Life Ins. & Trust Co. v. Debolt*, 16 How., 437; *Jefferson Branch Bank v. Skelly*, 1 Black, 436; *Home of the Friendless v. Rouse*, 8 Wall., 438; *St. Paul, &c., R. R. v. Parcher*, 14 Minn., 328); and if that were otherwise, the agreement of the company to construct the road shows a sufficient consideration. *People v. Auditor Gen.*, 7 Mich., 88, and the cases above cited from 6 and 16 How., 8 Wall., and 14 Minn. 2. That ch. 219, P. & L. Laws of 1868, which sought to abridge the original period of exemption, was void as impairing the obligation of the contract. Sedgw. on Stat. & Con. Law, 605; Cooley's Con. Lim., 126, 285; Cooley on Taxation, 53; *Sturges v. Crowninshield*, 4 Wheat., 197; *Ogden v. Saunders*, 12 id., 259; *McCracken v. Hayward*, 2 How., 612; *McGee v. Mathis*, 4 Wall., 156; *Walker v. Whitehead*, 16 id., 314, 317; *State of New Jersey v. Wilson*, 7 Cranch, 164; *Johnson v. Higgins*, 3 Metc. (Ky.), 566; *People v. Auditors*, 9 Mich., 327; *Washington Bridge Co. v. The State*, 18 Conn., 65;

*Montgomery v. Kasson*, 16 Cal., 189; *McCauley v. Brooks*, id., 27; *State ex rel. Voight v. Hoeflinger*, 31 Wis., 257; and the cases cited above. 3. That if the repealing act was invalid as against Babcock, plaintiffs' assignor, it was invalid as against the plaintiffs, though they took their assignment after the date of that act. *McGee v. Mathis, State ex rel. Damman v. Comm'rs*, and *St. Paul, &c., R. R. Co. v. Parcher, supra; P. & W. R. R. Co. v. Maryland*, 10 How., 376; *Tomlinson v. Branch*, 15 Wall., 460; *Myers v. S. F. R. Water Co.*, 14 Cal., 277; *Farmers', &c., Bank v. Fordyce*, 1 Pa. St., 455; *Rockwell v. Daniels*, 4 Wis., 438. 4. That even if ch. 219 of 1868 was valid, the repeal of sec. 2 of that act by ch. 178, P. & L. Laws of 1869, left the lands exempt in the hands of the contractor and his assigns at least until 1878. 5. That it cannot properly be claimed that plaintiffs were not entitled under their contract to the thirty sections which were first directed to be sold by the commissioners by sec. 10, ch. 478 of 1864, and that they were therefore not exempt. (1) Ch. 429, P. & L. Laws of 1867, makes no such distinction. It exempts unconditionally from taxation *all the lands* in this state granted by the act of congress there referred to, until March 3, 1873; and after that date it exempts *all* of those lands to which the contractor or his assigns may have title. (2) By a reasonable construction of the contract, plaintiffs were entitled under it to the lands described in the complaint. Babcock's proposal was to build the unfinished portion of the road (75½ miles) " for three sections of land to each mile of road to be constructed, being all the lands granted to the state of Wisconsin by the aforesaid act of congress, except the ninety sections already disposed of . . . and the thirty sections held or claimed to be held by the state of Wisconsin as a fund for the payment of expenses," etc. This proposal is incorporated into the contract as a premise, and explains and controls that portion of the contract which declares that, upon the completion of the work, Babcock is to have " all the lands

granted to the state by congress as aforesaid, except the thirty sections and the ninety sections hereinbefore mentioned, and that, on the completion of every ten miles of said road according to his contract, the said Babcock shall have conveyed to him thirty sections of land granted as aforesaid, to wit, three sections for each and every mile of road completed as aforesaid." The true meaning of the contract seems to be, that the contractor should have all the lands granted by congress which should remain after reimbursing the state. This construction is aided by the fact that the grant, without the unsold portion of the thirty sections, was inadequate by about 27,000 acres, to pay the contractor three sections for every mile constructed. The specific agreement of the state is to convey three sections for each mile. If the exception, following this specific description of what *is to be* conveyed, takes the unsold portion of the thirty sections out of the operation of the agreement, thus rendering it impossible for the state to convey three sections to the mile, it is repugnant to the agreement, and is therefore *void*. 3 Washb. R. P., 3d ed., 370; 2 Roll. Abr., 409; *Taylor v. Homersham*, 4 Maule & Sel., 426; *Ramsden v. Hylton*, 2 Ves., Sr., 310; *Lampon v. Corke*, 5 Barn. & Ald., 606; *Simons v. Johnson*, 3 Barn. & Ad., 175; *Lyman v. Clark*, 9 Mass., 235; *Rich v. Lord*, 18 Pick., 325; *Jackson v. Stackhouse*, 1 Cow., 122; *McIntyre v. Williamson*, 1 Edw., 34. If there is any repugnance between the description in the proposal or premise and the body of the contract, the fault being that of the state, plaintiffs may elect that which is most favorable to them. (3) In cases of doubtful meaning, the construction which the parties themselves put upon the contract is entitled to great consideration. *R. R. Co. v. Trimble*, 10 Wall., 367; *Boody v. R. R. Co.*, 3 Blatchf., 25; *Barker v. Railroad Co.*, 27 Vt., 766; *Fogg v. Ins. Co.*, 10 Cush., 337; *Citizens' F. I. Co. v. Doll*, 35 Md., 89. In both the contract and the patent, the state was the real party

on one side *( Winslow v. Crowell*, 32 Wis., 655); and the patent parties expressly declare that plaintiffs are entitled to the unsold portion of the thirty sections, by virtue of the contracts and assignments there mentioned. Indeed, if the plaintiffs were not entitled to the land under the contract, the governor had no authority to include them in the patent at all. There was no authority in any one to sell. the lands except at $1.25 per acre, and for the purpose of reimbursing the state for expenses. Laws of 1864, ch. 478, sec. 10. And this was not only a construction of the contract by the parties, but a binding *agreement* to so construe it. *Fletcher v. Peck*, 6 Cranch, 87; *West River Bridge Co. v. Dix, supra.* Moreover, the commissioners were a special tribunal, which, by sec. 6, ch. 478 of 1864, were specially authorized to award land *under the contract;* the governor acted ministerially only in issuing the patents upon the certificates of the commissioners; and the decision of the special tribunal is conclusive. *Johnson v. Towsley*, 13 Wall., 72. (4) The recital in the patent that plaintiffs are entitled to these lands under and by virtue of the contracts and assignments, is a complete *estoppel* in this action. Bigelow on Estoppel, 267, 295–7, 300, 301; *Hoshier v. Searle*, 2 Bos. & Pul., 299; *Doughty v. Neal*, 1 Saunders, 215, note (2); *Rowntree v. Jacob*, 2 Taunt., 141; *Shelley v. Wright*, Willes, 9; *Baker v. Dewey*, 8 E. C. L., 193; *Hill v. Proprietors*, 22 id., 135; *Lainson v. Tremere*, 28 id., 214; *Fletcher v. Peck, supra; Carver v. Astor*, 4 Pet., 1; *Carver v. Jackson*, id., 83; *Swain v. Seamens*, 9 Wall., 274; *French v. Fyan*, 93 U. S., 169; *County of Calhoun v. Am. Em. Co.*, id., 124; *Denn v. Cornell*, 3 Johns. Cas., 174; *Garwood v. Dennis*, 4 Bin., 314; *Penrose v. Griffith*, id., 231; *Comm. v. Andre*, 3 Pick., 224; *Comm. v. Pejepscut Prop'rs*, 10 Mass., 155; *Magee v. Hallett*, 22 Ala., 699; *Nieto's Heirs v. Carpenter*, 7 Cal., 527. The power of taxation is a power of the *state*, and the county and the local officers, through whom the

tax is assessed and collected, are bound by the recitals in the patent issued by the state. *Weeks v. Milwaukee*, 10 Wis., 200 (V. & B.'s notes); *Russell v. Reed*, 27 Pa. St., 170.

*G. W. Washburn*, for the respondent, argued, 1. That the plaintiffs were not entitled under the Babcock contract to any part of the thirty sections thereby expressly reserved by the state; and the exemption act of 1867, if a contract at all, was not a contract as to those lands. 2. That the act of 1868 limited the period of exemption to March 3, 1869; and the act of 1869, if valid for any purpose, extended the exemption to 1878 only as to such lands as remained in the hands of the state, or unimproved in the hands of the contractors; and it could extend to no portion of the grant except such as plaintiffs were entitled as contractors to acquire under their contract. 3. That the act of 1869 was void. 4. That defendants were not estopped by recitals of the patent. (1) Defendants are neither parties nor privies to that instrument. (2) When the recitals are not material to the instrument, or the action is not founded upon such instrument, but is wholly collateral to it, the recitals work no estoppel. *Carpenter v. Buller*, 8 M. & W., 209; *Champlain & St. L. R. R. Co. v. Valentine*, 19 Barb., 484–8; *Warren v. Leland*, 2 id., 613; *Reed v. McCord*, 41 N. Y., 438; 6 Cal. 153; Herman on Estoppel, 233. (3) The two recitals in the patent, that Babcock agreed to build his portion of the road for all the land granted by congress except the thirty sections and the ninety sections, and that he was entitled by virtue of his contract to the unsold portions of the thirty sections, being contradictory, neutralize each other, and the matter is set at large. *Wheelock v. Henshaw*, 19 Pick., 341; *Pelletreau v. Jackson*, 11 Wend., 110,118; *Carpenter v. Thompson*, 3 N. H., 204; *Branson v. Wirth*, 17 Wall., 32–42; *Sinclair v. Jackson*, 8 Cow., 543, 586; Herman on Estoppel, 241. (4) The patent does not recite that plaintiffs are entitled to the lands in question by virtue of the Babcock contract, but " by virtue of said contracts and assignments." They were clearly

not entitled to them by the Babcock contract. If they were so entitled by the Winslow contract, which was made in 1864, the exemption law of 1867 cannot be claimed to have entered into that contract. 5. That the exempting act of 1867 was not a contract, because there was no consideration for it. No conditions are imposed, no terms exacted, nothing required of any person receiving the concession. It does not purport to be for a consideration. It is not limited to such lands as might be earned after its passage, or upon contract entered into after its passage, and on faith thereof. When it passed, there was a contract already in force, made with Winslow in 1864, and assigned to Hadley, which contract and assignment had been ratified by the same legislature which passed the exemption law. Laws of 1867, ch. 79. The exemption act must be taken to have been passed with reference to that contract, under which it was expected that the road would be completed. The act of 1864, under which that contract was let and the road partly constructed, contained no stipulation for exemption. The exemption act of 1867 was, therefore, a mere gratuity, and subject at any time to modification and repeal. *Tucker v. Ferguson,* 22 Wall., 527–571; *Christ Ch. Hospital v. Philadelphia,* 24 How., 300; *Providence B'k v. Billings,* 4 Peters, 561; *Brainard v. Colchester,* 31 Conn., 410; *Lord v. Litchfield,* 36 id., 116; *East Saginaw Co. v. East Saginaw,* 19 Mich., 259; *S. C.,* 13 Wall., 373; *People v. Roper,* 35 N. Y., 629; *People v. Comm'rs of Taxes,* 47 id., 501. 6. That the legislature had no power by contract to deprive a subsequent legislature of the power of imposing any tax it might deem necessary for the public service, in the absence of anything in the state constitution conferring that power.

TAYLOR, J. The only question litigated in this action is, Were the lands described in the plaintiffs' complaint subject to taxation in the year 1872? The action is brought to set aside the taxes levied upon the lands for that year.

The plaintiffs claim that these lands were exempted from taxation in the year 1872, by virtue of the provisions of ch. 429, P. & L. Laws of 1867, as amended by ch. 219, P. & L. Laws of 1868, and ch. 178, P. & L. Laws of 1869. To understand the reason of this claim, it will be necessary to make a brief statement of the history of these lands down to the year 1872, when the county of Shawano assumed to tax them.

By an act of congress approved March 3, 1863, these lands, with others, were granted to this state for the purpose of aiding in the construction of a military road from Fort Wilkins, Copper Harbor, Kewenaw county, in the state of Michigan, to Fort Howard, Green Bay, in the state of Wisconsin. The time for completing the road mentioned in said act was extended by an act of congress approved June 8, 1868, to March 1, 1870. By ch. 478 of the laws of this state for the year 1864, said grant was duly accepted by the state, and provisions made for laying out and constructing such road, and appointing commissioners for that purpose.

Under the provisions of ch. 478, the commissioners entered into a contract on the 24th of August, 1864, with one Winslow, for the construction of the whole of said military road in this state. What the particular provisions of this contract were, does not appear from the record in this action. This contract was assigned in 1865, by Winslow, to the "United States Military Road Company," which appears to have been a corporation under the laws of this state. This company, and Winslow and Taylor as owners of the stock, property and effects of said company, shortly afterwards assigned the contract to one Jackson Hadley. Hadley performed some of the work of constructing said road, but died in 1867, not having completed the same. Previous to his death, the commissioners had certified that he had completed thirty miles of the road. After the death of Hadley, the administratrix of his estate assigned to Amalous G. Crowell her claim to the ninety sections to which Hadley was entitled under the contract, for the

completion of said thirty miles of road, and on the 30th day of July, 1867, a patent for said ninety sections was issued to said Crowell. On the 18th day of July, 1867, the said administratrix assigned in writing to John W. Babcock, Amalous G. Crowell and George N. Fletcher, all the interest which she had as administratrix in the said contract, so far as it related to the work under the same not then performed; Babcock to have one-fourth interest, Fletcher three-fourths of three-fourths, and Crowell one-fourth of three-fourths. These assignments by the administratrix of Jackson Hadley were made under the provisions of ch. 562, P. & L. Laws of 1867. It appears that the assignees of the Winslow contract did nothing under it after the death of Hadley, and the commissioners made a new contract with John W. Babcock for the completion of so much of the road as then remained uncompleted under the Hadley contract. This last contract bears date July 20, 1867. On the 24th of August, 1868, the commissioners extended the time for the completion of this contract to March 3, 1870. On the 1st day of January, 1869, Babcock assigned to the plaintiffs an undivided one-half interest in this last contract, and in the lands which should be granted by the state in pursuance thereof; but the plaintiffs were to have no interest in or claim to any lands which had been earned previous to the date of such assignment. On the 13th day of October, 1869, Babcock sold and assigned to the plaintiffs the remaining half interest in his contract, and the lands earned and to be granted in pursuance thereof subsequent to the 1st day of January, 1869. On the 24th day of October, 1871, the lands in question, with others, were granted by the state to the plaintiffs, who were the owners of the same in 1872, and at the time of the commencement of this action. These several assignments were approved at the time by the commissioners, on the part of the state.

Sec. 10 of ch. 478, Laws of 1864, above referred to, provides that the commissioners of school and university lands shall sell

such part of the first thirty sections of land authorized by said act to be sold, as may be sufficient to raise the amount necessary to reimburse the state for expenses of survey, compensation of commissioners, and damages authorized to be paid by said chapter. Section 6 of said chapter provides that all contracts made by virtue of the chapter shall be payable only in lands granted to the state by the said act of congress. By the contract made with Babcock, he agreed to build the road " for the land granted by congress to the state of Wisconsin to aid in the construction thereof, to wit, for three sections of land for each mile of road to be constructed by him, *being all the lands granted as aforesaid, except the ninety sections conveyed to Crowell as aforesaid, and the thirty sections held, or claimed to be held, by the state of Wisconsin, as a fund for the payment of expenses in and about the construction of said road.*" The patent of the lands to the plaintiffs, after describing the other lands patented under said contracts, recites as follows, in regard to these thirty sections: "And whereas, pursuant to the provisions of ch. 478 of the general laws of 1864, upon the establishment and survey of said proposed road, and the filing of the maps thereof with the secretary of the interior, the governor of the state of Wisconsin authorized and directed the commissioners of school and university lands to sell such part of the first thirty sections of land granted and authorized to be sold by said act of congress as might be sufficient to raise the amount necessary to reimburse the state for the expenses incurred under said act, as therein specified; whereas, the said commissioners of school and university lands have sold, of said thirty sections so reserved, 9,701.22 acres, leaving of said reserve now unsold the lands hereinafter described, which were approved to said state by the secretary of the interior, under said act of congress first above mentioned, on the 12th day of October, 1866; and whereas, the said *Fox* and *Weston* have advanced to the state the sum of seventeen hundred and fifty-six and 40-100 dollars for the payment of

the expenses incurred by the state in relation to the construction of said road, and it appears that, by the moneys realized from the sales made as aforesaid, and said advances, all of said expenses are fully paid, and that, under and by virtue of said contracts and assignments above mentioned, the said *Fox* and *Weston* are entitled to have and receive the residue of said thirty sections unsold, therefore," etc., granting the lands described in the complaint in this action. The patent also recites that there was a contract made with the said Winslow for the construction of said road, and the assignments thereof to the United States Military Road Company, and by it to Hadley, and also the assignments made by the executrix of Hadley after his death, as above stated; but it does not state or recite what the terms of the Winslow contract were.

The act of congress granting these lands to the state declares that they shall be subject to the disposal of the legislature thereof for the purposes of constructing such road, and no other. It also provides that the state may sell a quantity, not exceeding thirty sections, without producing a certificate that any part of the road has been constructed, and thereafter, when the governor shall certify to the secretary of the interior that any ten continuous miles of said road are completed, then another quantity of land, not exceeding thirty sections, may be sold, and so from time to time until such road is completed. The act grants three sections of land for every mile of road built.

It will be seen from the foregoing statement, that the act of congress contemplated that thirty sections of the grant might be needed for the expenses incidental to the state, in making surveys, locating the line, letting the contracts, and for the general supervision of the work; and it will also be seen that the legislature of this state took that view of the case, and directed that the first thirty sections granted to the state should be reserved and set apart for that purpose. Whatever the contract made with Winslow may have provided in regard to

these thirty sections, it is clear that the contract made with Babcock for the completion of the road took these sections out of the compensation which he bargained for receiving of the state. His contract expressly provides that he is to have " all the lands granted by congress for this work, except the ninety sections conveyed to Crowell and the thirty sections held or claimed to be held by the state of Wisconsin as a fund for the payment of expenses in and about the construction of said road." It is difficult to conceive how this language can be construed into a contract that he shall receive any part of these thirty sections for his compensation under it. It is true, the act of congress provides that the grant shall only be used by the state for the purposes of constructing such road; but it hardly follows, if Babcock saw fit to agree to construct the road for one-half of the lands so granted, that, upon the completion of his work, he would have the right to demand the whole of the lands granted. If the grant was of so great value that less than the whole of it was needed to complete the work, the state as trustee would have no right to donate the balance to the contractor, but, in keeping good faith with congress, it should return the surplus land to the United States.

We are satisfied that neither Babcock, nor his assignees, the plaintiffs in this action, were entitled to demand from the state any part of the said thirty sections above mentioned, by virtue of the provisions of their contract, and that the part granted to them by the state in the patent of 1871 was not granted in payment of any part of the compensation stipulated for by Babcock in his contract; that the only consideration received by the state for the same was the sum of $1,756.40, paid by *Fox* and *Weston* to the state at the time the patent was issued. These lands were not, therefore, held or owned, in 1872, by the contractor or his assignees, within the meaning of ch. 429, P. & L. Laws of 1867, cited below. Taking this view of the case, it becomes unnecessary to determine the very grave question as to the power of the legisla

ture of this state to pass a law exempting property held by a private citizen from taxation, either in perpetuity or for a term of years, which shall be irrepealable by any subsequent legislation, or of its power to contract with a citizen, for an adequate consideration, for exempting wholly from taxation, either in perpetuity or for a term of years, real estate or other property held and owned by such citizen.

It also becomes unnecessary to determine the effect of the repealing act, ch. 178, P. & L. Laws of 1869.

Ch. 429, P. & L. Laws of 1867, provides " that all the lands granted to the state to aid in the construction of this military road, shall be exempted from taxation and from assessment of any kind, up to the 3d of March, 1873, and during the time that the title to such lands shall remain in the state, *or in the contractor to construct said military road, or his assigns*," with a proviso that they should not in any case be exempted longer than the 3d day of March, 1878. Ch. 219, P. & L. Laws of 1868, amended this law, limiting the exemption to the 3d day of March, 1869, whether they were in the hands of such contractor or his assigns, or of any other person.

It is urged by the appellant that this amending act is unconstitutional, as impairing the obligation of the contract between Babcock and the state, and therefore void as to him. Babcock can only be heard to dispute the validity of this law upon the ground that he had a valid contract with the state for the purchase of these lands, made during the time the law of 1868 exempted them from taxation; and it is upon this ground alone that his counsel have contended that it was void. If the state was the owner of these lands at the time of the modified repeal of the exemption of 1867, and if it had made no valid or binding contract for their sale to any one, there can be no doubt of the power of the legislature to repeal the exemption.

The contract with Babcock having, as we have seen, ex-

cluded these lands therefrom, their value, whether taxable or nontaxable, not having entered at all into the consideration he demanded and bargained to receive from the state for completing such road, he and those claiming under him have no right to complain that the state saw fit to subject them to taxation as other lands sold by it. It is peculiarly ungracious on the part of these plaintiffs to complain that these lands are subjected to taxation as other lands, when we consider that they were donated to them at the nominal price of about seventeen cents per acre.

If it be urged that a liberal construction of the contract with Babcock would give him that part of the thirty sections which the state did not require to cover the expenditures for which they were set apart, we can only say that the construction would be most liberal indeed, and that where courts are required to construe contracts which might prevent the exercise of the taxing power of the state, they always construe them most liberally so as to preserve such power, and most strictly against those who claim that such power cannot be exercised against them or their property. Every citizen who claims an exemption from taxation which is not accorded to every other citizen, must make a very clear case in his favor. Courts will not, by strained construction, declare them or their property exempt, but will rather, by such construction, subject them to the general rule which governs as to other citizens and their property.

Judge Cooley, in his work on taxation, says: " And in any case the intention of the state to bind itself by an exemption must be clear, as all presumptions are against it." Cooley on Taxation, p. 54. In the case of *Jones Manufacturing Co. v. Commonwealth,* 69 Pa. St., 137, the court say: " The right to levy and collect taxes is a necessary incident of every government, essential to its very existence, and is never presumed to have been surrendered or abandoned, except by clear words, and for what is deemed at the time, by the law-making power,

an adequate compensation. The surrender cannot be extended by implication." It is a waste of time to cite authorities upon this point; it is too well settled to need examination. A great number of cases will be found cited by Judge Cooley in his work on taxation, at pp. 54 and 55.

Whether ch. 178, P. & L. Laws of 1869, with its peculiarly deceptive title, did or did not extend the time within which these lands, held by the contractor or his assigns, should be exempted from taxation, to March 3, 1878, is wholly immaterial; as in this case the lands are not held by the contractor or his assigns within the meaning of the act of 1867.

The appellant's counsel seemed to think, that because the governor had patented these lands to the assignee of the contractor, the state is estopped from claiming that they were not covered by the contract, and that we must presume there was something in the contract made with Winslow, and which had come to the plaintiffs by assignment, which entitled the plaintiffs to these lands as contractors for the construction of this road. We see nothing in the recitals in the patent which shows that the plaintiffs were entitled to these lands under the contract with Babcock. On the contrary, they show that they were not entitled to them, and that the plaintiffs paid the state a consideration for them. The court cannot presume there was anything in the contract with Winslow which entitled the plaintiffs to the lands. As shown above, in dealing with the question of exemption from taxation, nothing is to be presumed in favor of the party claiming the exemption. The burden of proof is continually on him to make out a clear case affirmatively. Again, it might well be urged, if, under the Winslow contract, the contractor was to have all the lands, including so much of these thirty sections as was not needed for the payment of the incidental expenses of the state, that, as such contract was made long before ch. 429, P. & L. Laws of 1867 was passed, granting the exemption, it was not entered into on the faith of such exemption; that the subsequent act

granting the exemption was without any consideration so far as that contract was concerned, and could not, therefore, bind the state against a repeal of the exemption.  See *Jones Manufacturing Co. v. Commonwealth, supra;* Cooley on Taxation, p. 55, note.  There can be but little doubt that the state can withdraw any exemption from taxation when such withdrawal does not necessarily impair the obligation of any contract made with the state upon the faith of the continuance of such exemption.  See cases cited *supra.*

We are satisfied with the conclusion arrived at by the learned circuit judge before whom the action was tried.

*By the Court.* — The judgment of the circuit court is affirmed.

RYAN, C. J., and LYON, J., took no part.

A motion for rehearing was denied.