WISCONSIN TELEPHONE COMPANY, and another, Plaintiffs-Respondents, v. CITY OF MILWAUKEE, Defendant-Appellant. [Case No. 76–260.]

WISCONSIN TELEPHONE COMPANY, and another, Plaintiffs-Respondents, v. CITY OF MILWAUKEE, Defendant-Appellant. [Case No. 76–261.]

WISCONSIN TELEPHONE COMPANY, and others, Plaintiffs-Respondents, v. CITY OF MILWAUKEE, Defendant-Appellant. [Case No. 76–262.]

WISCONSIN TELEPHONE COMPANY, and others, Plaintiffs-Respondents, v. CITY OF MILWAUKEE, Defendant-Appellant. [Case No. 76–711.]

Supreme Court

*Nos. 76–260, 76–261, 76–262, 76–711. Submitted on briefs October 4, 1978.—Decided October 31, 1978.*
(Also reported in 271 N.W.2d 362.)

For the appellant the cause was submitted on the brief of *James B. Brennan,* city attorney, and *Walter J. Schutz,* principal assistant city attorney.

For the respondents the cause was submitted on the brief of *Robert A. Christensen, Foley & Lardner,* and *Kenneth E. Millard,* all of Milwaukee.

BEILFUSS, C. J. These cases are consolidated for purpose of appeal because they all involve the same primary plaintiff, the Wisconsin Telephone Company, the same defendant, the City of Milwaukee, and the same issue. The issue is:

Does exemption from property taxation under the legislature's plan of "license fees in lieu of ad valorem taxes" taxation established by sec. 76.38(8), Stats., extend to property leased by the Wisconsin Telephone Company from a non-exempt private lessor-owner and used and useful in the operation of the business of the telephone company in this state?

In the first three cases the real property in question consists of three separate parcels and is owned by three owner-lessors. All three parcels are located in the City of Milwaukee and leased to the plaintiff-respondent Wisconsin Telephone Company prior to the May 1, 1974 assessment date. All three properties are used and use-

ful in the operation of the business of the telephone company in this state.

In the first action the Jared Corporation is owner-lessor. The basement portion of the building in question is leased to the telephone company and consists of 30 percent of the entire area of the building. It provides for one primary term of ten years commencing November 1, 1972, one automatic five-year renewal term and, on expiration of the renewal term, a month-to-month tenancy. The original annual rent was set at $25,000, payable in monthly installments. The landlord-lessor agreed to construct the premises to tenant-lessee's specifications, and to be responsible for all exterior maintenance and major repairs. The tenant-lessee is responsible for janitorial services, routine maintenance and all utility charges. The lease includes a "hold harmless" provision. The lease also contains a tax clause making lessee responsible for 30 percent of all real estate in excess of the amount assessed for the base year 1970. It also provides for a proportionate rent reduction if the property is exempted at any time from real estate tax.

In the second case the Lowell Land Company is the owner-lessor. This lease is for a one-story building (144 ft. x 122 ft. approx.) and adjacent parking area (50 ft. x 122 ft. approx.). It is for a term of five years from March 1, 1970, automatically renewable for another five-year period. Originally executed by the Humphrey Children's Trust, it was assigned to the Lowell Land Company in 1971. $27,000 was the original annual rent, to be paid monthly. The responsibilities of the parties with respect to maintenance and management of the property are substantially the same as those in the Jared lease outlined above. Real estate taxes are the responsibility of the lessor. However, any increase over the amount assessed in the base year 1969, not due to improvements by the lessor, is to be paid by the lessee.

Furthermore, if the property should at any time be exempted from real estate taxes, the rent is to be reduced by the proportionate amount of taxes attributable to the leased premises for the year 1970.

In the third case, Arthur N. Peters, Ambrose T. Peters, Robert P. Peters and Mary Louise Kaempfer are the owner-lessors. The subject of this lease is a one-story concrete block building (120 ft. x 140 ft.) with a surrounding lot (316 ft. x 276 ft. x 145 ft. x 332 ft.). The original term of the lease was for twenty years from March 25, 1947. By supplemental agreement dated July 20, 1964, this was extended to August 19, 1982. Monthly rent, originally $525, was increased to $750 by the same supplemental agreement. The lessor-lessee division of responsibilities followed the usual landlord-tenant agreement summarized above. All taxes levied against the property are payable by the lessee.

In 1974 the City of Milwaukee assessed and levied real estate taxes totalling $38,672.34 on the property in question; $25,312.72 for the Jared property, $6,896.62 for the Lowell property, and $6,463 for the Peters' property. The taxes for the first two properties were paid under protest on January 31, 1975; those for the third property on December 30, 1974.

Plaintiffs (lessor-owners and lessee-telephone company) in all three cases filed claims with the city for refunds on March 10, 1975. On May 6, 1975, the city notified them that all claims had been disallowed.

Plaintiffs then commenced these actions for recovery of the unlawful tax pursuant to sec. 74.73, Stats. Summons and complaint were filed on June 23, 1975. On July 15, 1975, the city (defendant-appellant) demurred to all three complaints on the ground that they failed to state facts sufficient to constitute a cause of action.

A hearing was held before Judge JACKSON on August 12, 1975. On June 25, 1976, the demurrers in

all three actions were overruled. Per stipulation dated October 20, 1975, the three cases consolidated.

The City of Milwaukee filed a notice of appeal dated November 5, 1976, from the order overruling the demurrers in each action.

The fourth case, No. 76–711, was heard by Judge DECKER. This case involves the same issue as the cases above and deals with the same fact situation with two differences: first, the taxes in question are those imposed on the three properties described above for 1975; second, the parties in this action originally included an additional plaintiff/lessor-owner, the Megal Development Corporation.[1]

In 1975, the City of Milwaukee, maintaining the position it had adopted in 1974 regarding the status of property leased by the telephone company, again imposed real estate property tax on the three properties: $19,450 for the Jared site, $7,026.85 for the Lowell site, and $7,943.36[2] for the Peters' site. The taxes were once again paid under protest and claims for a refund filed with the city. No action having been taken by the city within 90 days of the filing date (May 20, 1976), the three claims are deemed disallowed.[3]

A joint action by the property owners and Wisconsin Telephone Company for recovery of unlawful taxes was

---

[1] Plaintiffs ultimately conceded that the property owned by the Megal Development Corporation was not occupied by the telephone company on May 1, 1975 and, therefore, was not exempt as originally alleged. The city's motion to dismiss and for summary judgment with respect to this cause of action was therefore granted by Judge DECKER. No appeal was taken from this part of the order.

[2] Milwaukee alleged in its answer that city records showed the tax paid on the Peters' property as $7,439.13. In view of the total amount of the judgment awarded, it may be inferred that the trial court adopted the city's figure.

[3] *Cf.* sec. 74.73 (4), Stats.

brought in the circuit court for Milwaukee County. The summons and complaint were filed on September 20, 1976. On October 15, 1976, the city answered the complaint and filed a motion to dismiss for failure to state a claim upon which relief could be granted. Plaintiffs countered with a motion for summary judgment dated October 29, 1976. An affidavit filed with the motion declared that on May 17, 1976, Wisconsin Telephone Company paid $29,838,827.99 to the state in telephone license fees imposed under sec. 76.38(8), Stats. The city filed a motion to dismiss dated December 7, 1976 for failure to state a claim.

On January 17, 1977, a hearing was held on the matters before the Circuit Court for Milwaukee County, JOHN A. DECKER, Circuit Judge. All factual disputes having been settled, the only issue before the court was a question of law, *i.e.*, whether the leased properties occupied by the telephone company were exempt from property taxation by the city.

On February 8, 1977, the court filed a memorandum decision granting plaintiffs' motion for summary judgment and denying the city's motions to dismiss and for summary judgment. In its decision the court made the following analyses of the issue: Sec. 76.38(8), Stats., was unambiguous; its clear language provided the exemption to property used and useful in the operation of the telephone company regardless of actual ownership of the site; this interpretation furthered the legislature's overall statutory "license fees in lieu of taxation" scheme; even if sec. 76.38(8) were considered ambiguous and sec. 70.112(4) were looked to for clarification, the construction given sec. 76.38(8) was not inconsistent with that statute's terms.

Judgment for the plaintiffs was entered on March 10, 1977 in the amount of $33,915.98, with interest of $1,-837.12 and costs of $124.

The city appealed to this court from the whole of the judgment. Notice of appeal was filed in the circuit court on May 25, 1977.

To resolve the tax exemption issue we must construe the two following statutes:

"76.38 **Telephone license fees.** . . .

"(8) The license fees imposed by this section upon the gross revenues of telephone companies as defined in subsection (1) shall be in lieu of all other taxes on all property used and useful in the operation of the business of such companies in this state, except that the same shall be subject to special assessments for local improvements."

"70.112 **Property exempted from taxation because of special tax.** The property described in this section is exempted from general property taxes: . . .

"(4) SPECIAL PROPERTY AND GROSS RECEIPTS TAXES OR LICENSE FEES. All special property assessed under ch. 76 and such property of any telephone company, car line company, and electric co-operative association as is used and useful in the operation of the business of such company or association. Nothing herein provided shall exclude any real estate from special assessments for local improvements under s. 66.64, nor any property which is separately accounted for under s. 196.59."

The plaintiffs-respondents (lessor-owners and lessee-telephone company) maintain that sec. 76.38(8), Stats., is unambiguous and, by its clear terms, extends the tax exemption to "used and useful" property occupied by the telephone company under a lease. The City of Milwaukee (defendant-appellant) takes the position that the language of sec. 76.38(8) must be harmonized with sec. 70.112(4) exempting "such property of any telephone company . . . as is used and useful in the operation of the business . . . ." from taxation. Reading the two statutes together, the city contends that both use and true or beneficial ownership of the property are required for property tax exemption under sec. 76.38(8). Analyzing the several lease agreements, the city concludes and argues that the requisite "beneficial ownership" is not

in the telephone company in any of the cases, since not only legal title but also other significant indicia of ownership are in the lessor-owners.

Initially it should be stated that the tax relief device at issue here does not provide an absolute exemption from taxation like that legislated in sec. 70.11, Stats., for certain public and private entities.[4] Despite the exemption from general property tax given the telephone companies in sec. 70.112, the company, as a practical matter, remains tax accountable. This is achieved by the legislature's general "in lieu of all other taxes" plan in sec. 76.38 which imposes a special state tax or license fee on telephone companies. This license fee, computed upon the company's total "gross revenues" as defined in sec. 76.38 (1) (c), replaces "all other taxes on all property used and useful in the operation of the business of such companies in this state" with the sole exception of special assessments for local improvements. The record reveals that the Wisconsin Telephone Company's annual license fee for 1975 totaled $29,838,827.99.

This type of tax plan is not new. "In lieu of all other taxes," license fees and gross receipts taxes were a recognized legislative alternative to traditional taxation in Wisconsin as long ago as the second half of the nineteenth century.[5] Initiated in order to implement a state policy of promoting communication and transportation industries within the state, these devices have also been used to effect an equitable distribution to local governments of tax proceeds from certain types of companies whose earnings derive from business generated over a large area encompassing many separate municipalities,

---

[4] This statute includes, for example, local units of government; educational, religious, and benevolent institutions; nonprofit hospitals; colleges and universities.

[5] *See* Lewis R. Mills, *The Railroad Gross Earnings Tax in Wisconsin*, 1965 Wis. L. Rev. 713.

but whose tangible taxable properties may be concentrated in only a few.

Taxation is the rule and exemption the exception. It is generally held that statutes exempting property from taxation are to be strictly construed against an exemption.[6] This court in *Merrill Railway & Lighting Co. v. Merrill,* 119 Wis. 249, 253, 96 N.W. 686 (1903), in dealing with a similar exemption stated:

> "On the one hand, it has been held in this state that statutes exempting property from the general rule of taxation are to be construed with the utmost strictness, and that, as so construed, the word 'owned,' in statutes describing exempt property, must receive its most limited meaning, and be satisfied only by complete and entire ownership, or at least not by leasehold title. [Cases cited.] On the other hand, it is equally well settled that, where the statute in terms exempting property from general taxation is only a part of a general statutory scheme substituting a license or other impost in lieu of general taxation, the rule of strict construction has no application, but, on the contrary, such a statute is to be construed liberally in favor of the person required to pay taxes in the substituted license form. [Cases cited.]"

Secs. 76.38(8) and 70.112(4), Stats., are, thus, entitled to liberal construction in favor of plaintiffs because the exemption is in lieu of another form of taxation.

In support of their argument plaintiffs refer the court to the recent case of *First Nat. Leasing Corp. v. Madison,* 81 Wis.2d 205, 260 N.W.2d 251 (1977), which dealt with sec. 70.11(4m), Stats., exempting property used by non-

---

[6] *See Weston v. Shawano Co.,* 44 Wis. 242, 256 (1878): *Milwaukee v. Milwaukee County,* 95 Wis. 424, 69 N.W. 819, 69 N.W. 984 (1897); *Katzer v. Milwaukee,* 104 Wis. 16, 80 N.W. 41 (1899); *Douglas County Agricultural Society v. Douglas Co.,* 104 Wis. 429, 80 N.W. 740 (1899).

profit hospitals. There the court, *supra,* at 210, reasoned
that the legislature in granting the exemption "inten-
tionally chose not to give any weight to ownership or
incidents of ownership" and to establish use as the sole
criterion for exemption. The city does not contend the
legislature could not have exempted property used but
not owned by the telephone company; its argument is
that the legislature did not.

The important question remains whether the property
used by the telephone company in the three cases is in
fact "property of" the telephone company under sec.
70.112(4) and, by necessary implication, sec. 76.38(8),
Stats. No Wisconsin case defines the phrase "property
of." Both parties refer to the interpretation given the
term in other jurisdictions. However, in questions of
statutory construction, decisions from other courts
having different statutory schemes or different general
rules for construction of somewhat similar statutes are
of little use.

In *Merrill Railway & Lighting Company, supra,* this
court viewed the term "owned" within the framework
of a provision exempting "real estate owned and actually
and necessarily used" by street railways upon payment
of a graduated license fee. The court interpreted the
phrase liberally in light of its conclusion that "the legis-
lature intended in a general way to exempt from specific
assessment and taxation those things which, in associa-
tion with each other, help to produce the gross revenue
on which the license fee is to be measured." *Supra* at
255. Its language is instructive:

"It cannot be denied that the word 'own' is used both
colloquially and in the law to designate a great variety
of interests in property. As titles and rights to real
property vary from the absolute and unqualified fee
simple to that of the mere occupant, so the word 'own'
or 'ownership' varies in its significance. For most

practical purposes the tenant under a lease for 1,000, or even for 100, years exercises as complete control as the holder of the fee simple. The holder of a fee subject to be determined on some remote contingency, or the holder of a life estate, satisfies the ordinary conception of ownership, but the graduations from this phase of partial ownership to that of the mere tenant from month to month are nearly infinite in number, and each almost infinitesimal in degree. It seems, therefore, quite impossible to draw any line logically between the absolute and unqualified fee simple on the one hand and the mere right of occupancy on the other. Hence it is not surprising that we find the word in statutes given the widest variety of construction, usually guided in some measure by the objects sought to be accomplished in the particular instance. . . Thus it appears very clearly that the word 'owned' is not a technical term; that it is a general expression to describe a great variety of interests, and may vary in significance according to context and subject matter. That being so, we are constrained by the rule of the Wisconsin authorities to give to it in the statute now under consideration as liberal construction as it will reasonably bear in favor of the respondent company, which has paid the full license fee imposed by law in lieu of all other taxes. The applicability of this rule requiring liberality of construction of course renders nonauthoritative the cases where, as expressly declared, the court was bound to adopt the most strict and limited meaning of which the same word was capable.

"In light of these rules of construction, then, we have to consider whether the legislature can in reason be supposed to have used the word 'owned' in so general a sense as to be satisfied by a leasehold right for a term of five years. The purpose of this whole scheme was to measure the contribution of street railways to the public revenues by the earning capacity of their plants as entireties, recognizing that such plants include many elements which are peculiarly intangible and difficult of valuation by ordinary methods, such as the franchises to do business; the privileges to use highways and public grounds; the questionable title to the structures affixed to such realty and consequent difficulty of valuation specifically; the uncertainty, if not absence, of sale value

of each element of the plant, except as used in connection with every other part and in connection with the special franchises and privileges. It seems to us entirely probable that the legislature intended in a general way to exempt from specific assessment and taxation those things which, in association with each other, help to produce the gross revenue on which the license fee is to be measured. In this view it is difficult to see why leased property should not fall within the purpose of the exemption as readily as that owned absolutely, while actually used for the purposes of the enterprise. What difference would it make that this power plant had been purchased? . . ." *Id.* at 253–255.

The court, noting that the company had paid the full license fee imposed on it, concluded that the term "owned" was satisfied by a leasehold right to a term of five years.

The city argues this court in *Mitchell Aero, Inc. v. Milwaukee*, 42 Wis.2d 656, 662, 168 N.W.2d 183 (1969), readdressed the concept of ownership in an action for refund of personal property taxes:

"Ownership is often referred to in legal philosophy as a bundle of sticks or rights and one or more of the sticks may be separated from the bundle and the bundle will still be considered ownership. What combination of rights less than the whole bundle will constitute ownership is a question which must be determined in each case in the context of the purpose of the determination. In this case for exemption one needs more than the title stick to constitute ownership."

After analyzing the lease agreement between the company, a private air carrier, and the county, the court concluded that although legal title was in fact in the county there were insufficient additional indicia of ownership to constitute the county the true owner of the property under the provisions of sec. 70.11(2), Stats. The same principles were applied in *State ex rel. General*

*Motors Corp. v. Oak Creek,* 49 Wis.2d 299, 182 N.W.2d 481 (1971), within the framework of sec. 70.18(1). However, the appropriate test in determining whether the property in question is exempt from local taxation on the principle that it is "owned by" or is "the property of" an entity entitled to a tax exemption is the practical ownership of the property rather than the holding of the naked legal title. *Cf. State ex rel. General Motors Corp., supra,* p. 309.

We do not believe *Mitchell Aero* is applicable here, nor does it modify this court's holding in *Merrill Railway & Lighting Company.* The legislative standard for an exemption in sec. 76.38(8), Stats., for telephone companies is the "used and useful" concept of the property and ownership. The exemption sought in *Mitchell Aero* was based upon a claim of ownership of the property by the county. There was no other tax in lieu of the property tax as there is here and for that reason we don't believe *Mitchell Aero* should apply to the case at hand.

The liberal construction of secs. 76.38(8) and 70.112 (4), Stats., which must be applied, compels the conclusion that the legislature intended the property used and useful in a telephone utility's business should be exempt from ad valorem tax because of the license fee in lieu thereof.

The order overruling the demurrers should be affirmed; the summary judgment in favor of the plaintiffs should likewise be affirmed.

*By the Court.*—Order in Cases 76–260, 76–261 and 76–262 affirmed; judgment in Case 76–711 affirmed.